

RUTHERFORD & CHRISTIE LLP

NEW YORK   ATLANTA

August 1, 2016

*Via ECF*
Honorable Judge Allyne R. Ross
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: *G.S., et al., Plaintiffs vs. Congregation Lev Bais Yaakov, et al., Defendants*
      *U.S. District Court, EDNY, Docket No.:15 CV 3086, File No.:215.272*

Dear Judge Ross:

  Pursuant to your Order of July 19, 2016, below follows a briefing on why the defendants in the above-captioned case are entitled to summary judgment on the plaintiff's Rehabilitation Act claims, and therefore the remainder of the action lacks subject-matter jurisdiction. The plaintiff has failed to show that Lev Bais Yaakov received the requisite funding to trigger the protections of the Rehabilitation Act, and also failed to show that Lev Bais Yaakov violated the Rehabilitation Act. Furthermore, as both plaintiff and defendants are residents of New York State, there is no basis for diversity jurisdiction.

### STATEMENT OF RELEVANT FACTS

  Plaintiff G.S. was a student at Lev Bais Yaakov High School during the 2013-2014 academic year, until she was expelled on or about December 4, 2013. **Exhibit "A,"** Pl.'s Amd. Cmpl. ¶¶20-21 Rabbi Samuel Deutsch, the Executive Director of Lev Bais Yaakov, stated at deposition that the school participated in a federal lunch program for a time. **Exhibit "B,"** Deutsch Dep. Trp. pp. 73, 134. A FOIL request made by the plaintiff to the State Education Department confirms that the school participated in the Child Nutrition program during the 2012-2013 school year. The last payment received from the Child Nutrition program, which is a federally funded program, was on September 23, 2013, for services provided in April and June of 2013. **Exhibit "C,"** Fiscal Management Services Record. Rabbi Deutsch denies any other federal funding, and no other federal funding sources have been disclosed by either party. **Exhibit "B,"** pp. 134-135.

  G.S. struggled academically during her tenure at Lev Bais Yaakov. **Exhibit "D,"** Bollag Dep. Trp. p. 23. Ms. Tova Bollag, a licensed social worker and a student advocate for Lev Bais Yaakov, is tasked by the school with helping students who are struggling academically. *Id.* pp. 9, 14. She met occasionally with G.S. to discuss her academic situation, and, in fact, met with the plaintiff's parents as well as Lev Bais Yaakov Principal Batya Sochaczweski days before the plaintiff was expelled to

*Page Two*
*August 1, 2016*
*Our File No.: 215.472*

discuss creating an approach that would better equip G.S. for success at school. *Id.* pp. 25, 100., **Exhibit "E,"** Sochaczewski Dep Trp. pp 80. Additionally, prior to the expulsion, the plaintiff had other disciplinary issues. Ms. Sochaczewski had prior discussions with the plaintiff regarding her excessive absences from school and class, missed tests, and failure to complete homework assignments. *Id.* pp. 66-71. In May 2013, the plaintiff was suspended for violating the technology rules of the school by bringing her iPhone to class. **Exhibit "F."**

The plaintiff was expelled after Ms. Sochaczeweski received an anonymous telephone call from a mother who claimed that her son had a nude photograph of the plaintiff on his cell phone. **Exhibit "E"** p. 117. The caller would not identify herself, and stated that she was advised by her husband, a lawyer, not to forward the photograph to the school, as it constituted child pornography. *Id.* Ms. Sochaczewski felt the call was credible, and brought the issue to Rabbi Deutsch. *Id.* pp. 118, 120. Rabbi Deutsch made the decision to expel the plaintiff because he felt he had an obligation to the rest of the students to protect them from being affected by her behavior. **Exhibit "B,"** pp. 245, 274.

At the plaintiff's deposition on November 30, 2015, she stated that her current address was 914 East 31st Street, Brooklyn, New York. **Exhibit "G,"** Pl.'s Dep. Trp. p. 7. This address is the domicile of her father Morris S. **Exhibit "H,"** Morris S. Dep. Trp. p. 4. She stated that she has resided there since she was three, and had no other residences during that time. *Id.* p. 10. Following her expulsion from Lev Bais Yaakov, the plaintiff attended The Shaarei Torah School of Richmond, Virginia for a year and a half. *Id.* p. 55. During the time she attended school in Richmond, she lived in a dorm on the school's campus. *Id.* She would stay there for some holidays and breaks, but would return "home" to Brooklyn for other holidays. *Id.* At the time of her deposition, she was no longer enrolled in Shaarei Torah, and had no plans to return.

## ARGUMENT

### Lev Bais Yaakov Did Not Receive the Requisit Federal Funding to be Subject to a Rehabilitation Act Claim

Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, prohibits a recipient of federal funds from discriminating against an individual with a disability solely by reason of that disability. <u>C.D. v New York City Dept. of Educ.</u>, 2009 WL 400382 (S.D.N.Y. February 11, 2009). <u>In U.S. Dept. of Transp. v. Paralyzed Veterans</u>, 477 U.S. 597 (1986), the Supreme Court considered the issue of whether an entity is the recipient of federal assistance for §504 purposes. In discussing the scope of that statute, the Court explained:

*Page Three*
*August 1, 2016*
*Our File No.: 215.472*

Congress limited the scope of §504 to those who actually "receive" federal financial assistance because it sought to impose §504 coverage as a form of contractual cost of the recipient's agreement to accept the federal funds. "Congress apparently determined that it would require contractors and grantees to bear the costs of providing employment for the handicapped as a quid pro quo for the receipt of federal funds."

DOT v. Paralyzed Veterans at 605

The Court further explained: "By limiting coverage to recipients, Congress imposes the obligations of section 504 upon those who are in a position to accept or reject those obligations as a part of the decision whether or not to "receive" federal funds." *Id.* It is well-established that federal funding must be received by an institution in order for the restrictions of §504 to apply.

Additionally, simply because an institution receives federal funding does not mean all aspects of the institution are subject to the regulation. *See* Chaplin v. Consolidated Edison Co., 628 F. Supp. 143 (S.D.N.Y. 1986) (federal funds used to subsidize training programs within Con Ed for those unemployable candidates referred by local community organizations are not enough of a nexus to require all of Con Ed to be regulated under §504.) While Congress amended Title IX to apply institution-wide rather than only to individual programs or activities, Congress has not similarly amended the language in the Rehabilitation Act. Thus, any funding conditions are limited only to the specific programs and activities receiving funding. *See* Johnson v. Transportation Agency, 480 U.S. 616, 629(1987). Furthermore, the regulation applies solely during the period in which federal funding is received. *See* Stephandis v. Yale University, 652 F.Supp. 110 (D. Conn. 1986) (when federal grants trigger the application of the Rehabilitation Act and the ADA then the acts would be applicable only during the period in which federal financial assistance was being extended.)

In the instant case, Lev Bais Yaakov rejected federal funding of its lunch program prior to the 2013-2014 school year. Therefore, it also rejected the obligations of § 504, accordingly. By the time of the alleged discrimination resulting from the expulsion of the plaintiff in December 2013, not only had the school withdrawn from the federal Child Nutrition program, but it had fully ceased receiving payments for the school's past program participation. Notably, there is no allegation that the plaintiff participated in the lunch program while attending Lev Bais Yaakov, or that the discrimination alleged stemmed from the school's lunch policies. Additionally, Lev Bais Yaakov accepted no other federal funding at any time in its history, as stated by the Executive Director Rabbi Deutsch. No other sources of funding were discovered during the course of litigation. Therefore, the plaintiff has no viable claim under the Rehabilitation Act, and it is respectfully requested that the Court grant summary judgement to the defendants with regard to all Rehabilitation Act claims brought against them.

RUTHERFORD & CHRISTIE LLP

*Page Four*
*August 1, 2016*
*Our File No.: 215.472*

### The Defendants Did Not Violate The Rehabilitation Act

Even if the Court finds that Lev Bais Yaakov did accept funding at the time of the alleged discriminatory actions, the plaintiff still has not met her burden of proof to show an actual violation of the Rehabilitation Act. In order to succeed on a claim under the Rehabilitation Act, the plaintiff must demonstrate four elements: (1) that the plaintiff was disabled within the meaning of the Rehabilitation Act; (2) that the School had notice of the plaintiff's disability; (3) that the plaintiff could participate in and benefit from the school's educational program with a reasonable accommodation of her disability; and (4) the School refused to make such an accommodation. K.H. v Vincent Smith School, CV 06 0319(ERK)(JO), 2006 WL 845385, at *8 (E.D.N.Y. Mar. 29, 2006)

The elements of a claim under the Rehabilitation Act are "identical" to those supporting a claim under the ADA, with one important exception: "under the Rehabilitation Act, the defendant must have discriminated against the plaintiff 'solely' because of the plaintiff's disability, whereas under the ADA, it is enough if the plaintiff's disability was a motivating factor in the discrimination." Spychalsky v. Sullivan, 2003 WL 22071602, at *6 (E.D.N.Y. Aug.29, 2003) (citing Rodriguez v. City of New York, 197 F.3d 611, 618 (2d Cir.1999)); see also Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir.2003). Even if the plaintiff can establish those elements and thereby prove a prima facie case, the School may defeat her claim if it can establish that the accommodation the plaintiff needs would cause it to suffer undue hardship. See Borkowski v. Valley Central School Dist., 63 F.3d 131, 138 (2d Cir.1995).

The plaintiff claims that the reasons the plaintiff was expelled are "manifestations of her learning disability." **Exhibit "A,"** ¶69. It is the defendants' position that the plaintiff's expulsion was a direct result of her violation of the behavioral rules and regulations of the school. The plaintiff cannot expect the School to accommodate the plaintiff's disability by excusing her disciplinary problems. See Bercovitch v. Baldwin School Inc., 133 F.3d 141, 152 (1st Cir.1998) (finding that school was not required to exempt student with ADHD from the normal operation of its disciplinary code); see also 42 U.S.C. § 12182(b)(2)(A)(ii) (exempting covered entities from providing accommodations that "would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations"). Furthermore, the defendants made many efforts to accommodate the plaintiff. Ms. Sochaczewski met with the plaintiff numerous times, and helped arrange for the plaintiff to take missed exams at later dates. Ms. Bollag reached out to the plaintiff's parents to help develop strategies for the plaintiff to successfully complete her homework and to get to school on time. Many of the faculty members, including Ms. Sochaczewski and Ms. Bollag felt that the plaintiff required an *Ichud* program, designed for students with learning disabilities like the plaintiff. However, the recommendation was utterly rejected by the plaintiff's parents. **Exhibit "D,"** pp. 26-27, **Exhibit "E,"** pp.80-82.

*Page Five*
*August 1, 2016*
*Our File No.: 215.472*

      There is no evidence that the defendants refused to reasonably accommodate the plaintiff. To the contrary, they made every academic accommodation they could for her. Her expulsion was based solely upon disciplinary concerns. Therefore, the plaintiff cannot prevail on her Rehabilitation Act cause of action, which requires that defendant must have discriminated against the plaintiff 'solely' because of the plaintiff's disability, and refuse to make reasonably accommodations for the plaintiff. Accordingly, we respectfully request the Court grant the defendants summary judgment on the plaintiff's claim that the school failed to reasonably accommodate for the plaintiff's education disabilities pursuant to 29 U.S.C. § 794.

### There Is No Basis for Diversity Jurisdiction

      The plaintiff in this case was born on September 2, 1997. **Exhibit "G,"** p. 7. At the time of the events of this case, and at the time suit was brought, the plaintiff was a minor. As such, her domicile for the purposes of this lawsuit should be determined to be her father's home in Brooklyn, New York. "The domicile of a minor is generally determined by reference to another person because minors are legally incapable of forming the requisite intent to regard a place as home ..." Dunlap v. Buchanan, 741 F.2d 165, 167 (8th Cir.1984), *cited by* Clyde by Clyde v. Ludwig Hardware Store, Inc. 815 F.Supp. 688, 690 (S.D.N.Y. 1993). Historically, an infant takes the domicile of its father. Yarborough v. Yarborough, 290 U.S. 202, 211 (1933). By the time the plaintiff turned eighteen, she had already returned from Virginia and enrolled in a G.E.D. program at Touro College in New York. **Exhibit "G,"** p. 57.

      Furthermore, a person's domicile for diversity purposes is the place of one's true, fixed, and permanent home and principal establishment, and to which one has the intention of returning whenever one is absent therefrom. When deciding the question of domicile for diversity jurisdiction, the court must determine whether the party has a physical presence at a diverse location and if the party intends to make that a permanent home. 32A Am. Jur. 2d Federal Courts §657. The plaintiff resided in a dormitory at a boarding school in Virginia for a year and a half, returning to what she called "home" occasionally on holidays and breaks. Furthermore, she stated at deposition that she has considered her Brooklyn address her permanent address since the age of three, and had no intention of returning to Virginia. Therefore, even if the Court determined that the plaintiff's domicile should be recognized for the purposes of deciding the question of domicile for diversity jurisdiction, the result should be the same. The plaintiff's domicile is Brooklyn, New York, where the defendants are all domiciled as well. No diversity jurisdiction exists in this case.

RUTHERFORD & CHRISTIE LLP

*Page Six*
*August 1, 2016*
*Our File No.: 215.472*

## CONCLUSION

For the reasons states above, the defendants are entitled to summary judgment on the plaintiff's Rehabilitation Act claim, and there is no evidence of diversity jurisdiction. Therefore, we request that the Court issue an Order granting summary judgment to the defendants on the plaintiff's federal claim, and decline to exercise pendent jurisdiction over the remaining state law claims.

Thank you for your consideration of this matter.

Respectfully Submitted,

**RUTHERFORD & CHRISTIE, LLP**

By: _____
Adam C. Guzik

cc:     **Via ECF & First Class Mail**
        **Robert J. Tolchin, Esq.**
        **The Berkman Law Office, LLC**
        **Attorneys for the Plaintiffs**
        **111 Livingston Street, Suite 1928**
        **Brooklyn, New York 11201**
        **(718) 855-3627**

RUTHERFORD & CHRISTIE LLP