FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ FEB 6 - 2017 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X

G.S., a minor under the age of 18, by her father and natural guardian, MORRIS S.,

                Plaintiff,

   -against-

CONGREGATION LEV BAIS YAAKOV, RIVKA ORATZ, and SHMIEL DEUTSCH,

                Defendants.

------------------------------------------------------------------ X

15-CV-3086 (ARR) (RER)

NOT FOR ELECTRONIC
OR PRINT PUBLICATION

OPINION AND ORDER

ROSS, United States District Judge:

    Plaintiff G.S., a minor, brings this action through her father and natural guardian, Morris S., against defendants Congregation Lev Bais Yaakov, which operates as Lev Bais Yaakov High School; Rivka Oratz, the school's principal; and Shmiel Deutsch, also known as Sam Deutsch, the school's executive director (collectively, "defendants"). Plaintiff asserts a federal claim under the Rehabilitation Act of 1973, arguing that defendants failed to accommodate her learning disability when they expelled her from Lev Bais Yaakov High School in December 2013. Plaintiff also contends that defendants are liable for state common law negligence, defamation, intentional infliction of emotional distress, prima facie tort, and breach of contract in connection with the expulsion. The court instructed defendants to move for summary judgment only as to plaintiff's federal claim, on which the court's jurisdiction over the state law claims depends. For the reasons explained below, the court grants defendants' motion for summary judgment as to plaintiff's federal claim and declines to exercise supplemental jurisdiction over the remaining state law causes of action.

1

## FACTUAL AND PROCEDURAL BACKGROUND

The plaintiff first enrolled in Lev Bais Yaakov High School ("LBY") in fall 2012, when she was a ninth grader.[1] *See* Application for Admission, Pl.'s Mem. of Law in Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s Opp'n") Ex. A, Dkt. #66-1 at 14–17; Dep. of Rivka Oratz ("Oratz Dep."), Pl.'s Opp'n Ex. C, Dkt. #66-3 at 55:14–19. Plaintiff had an Individualized Education Program ("IEP"),[2] but plaintiff's parents did not disclose this fact in plaintiff's application to LBY. Oratz Dep., Pl.'s Opp'n Ex. C, Dkt. #66-3 at 87:14–88:1. Plaintiff struggled in her classes and periodically met with Tova Bollag, a licensed social worker, who provided academic support to plaintiff. Dep. of Lev Bais Yaakov High School ("LBY Dep."), Pl.'s Opp'n Ex. E, Dkt. #66-5 at 25:6–26:3. Rivka Oratz, the school's Hebrew studies principal, and Mrs. Weissman, LBY's general studies coordinator, sent a letter to plaintiff's parents in October 2012 recommending that plaintiff take an additional weekly biology class at a cost of $17.50 per week in order to improve her performance. Letter, Pl.'s Opp'n Ex. A, Dkt. #66-1 at 25. Plaintiff's parents asked that plaintiff be permitted to take the course for free, and Shmiel Deutsch, the school's executive director, denied the request. Email, *id.* at 180. Additionally, in November 2012, Oratz reached out to plaintiff's mother "requesting that the plaintiff's religious studies tutor contact a school employee so that the school could better understand the plaintiff's limitations and to form more reasonable expectations." Pl.'s Opp'n at 6, Dkt. #66 at 11; Email, Pl.'s Opp'n Ex. A, Dkt. #66-1 at 29.

---

[1] As required at the summary judgment stage, all facts in the record are construed in favor of the plaintiff. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

[2] "An IEP . . . is a written statement that sets out a special education student's present educational performance, objectives for improvement, and specially designed instruction and services." *Volpe v. N.Y.C. Dep't of Educ.*, --- F. Supp. 3d ---, No. 15-cv-7110, 2016 WL 3910667, at *1 n.2 (S.D.N.Y. July 14, 2016) (citing 20 U.S.C. § 1414(d)).

Plaintiff re-enrolled in LBY for the 2013–2014 school year. *See* Oratz Dep., Pl.'s Opp'n Ex. C, Dkt. #66-3 at 182:8–11. In early December 2013, at Oratz's suggestion, defendants met with plaintiff's parents in order to discuss possible strategies to help plaintiff improve her academic performance. *See* Email, Pl.'s Opp'n Ex. A, Dkt. #66-1 at 178; Oratz Dep., Pl.'s Opp'n Ex. C, Dkt. #66-3 at 276:14–277:2.

A few days later, LBY's general studies principal, Batya Sochaczewski, received a phone call from an unidentified woman claiming to be a male student's mother. Oratz Dep., Pl.'s Opp'n Ex. C, Dkt. #66-3 at 181:12–16, 183:2–23. The woman said that she had found a nude photograph of the plaintiff on her son's cell phone. Dep. of Batya Sochaczewski ("Sochaczewski Dep."), Defs.' Mot. Ex. E, Dkt. #64-5 at 117:4–19. Sochaczewski asked the woman if she could send her the photograph, but the woman responded that her husband had told her the photograph constituted child pornography and should not be transmitted. *Id.* at 117:19–23. In her deposition, Sochaczewski testified that she thought the caller was credible because her description of the girl in the photograph "matched the girl that was sitting in our classroom." *Id.* at 118:5–15. Further, the caller said that her son had told her that the girl in the photograph was the plaintiff, and that she was a tenth grader at LBY. *Id.* at 118:10–13. Sochaczewski told Oratz about the phone call, and Oratz said the issue should be taken to Deutsch. *Id.* at 120:15–25.

Deutsch decided to expel the plaintiff based on the information he received from Sochaczewski and Oratz. Dep. of Shmiel Deutsch ("Deutsch Dep."), Pl.'s Opp'n Ex. B, Dkt. #66-2 at 244:18–245:10. Deutsch testified at his deposition that he thought the plaintiff's alleged transmittal of the nude photograph had the potential to affect the well-being of the other girls at LBY. *See id.* at 273:15–275:5. Deutsch did not investigate the phone call further; he relied on Sochaczewski's and Oratz's accounts in deciding to expel the plaintiff. *Id.* at 232:15–233:3;

3

244:16–17. Deutsch informed plaintiff's parents of his decision during an in-person meeting, at which the plaintiff was not present. *Id.* at 278:20–279:9. After the meeting, defendants emailed the parents of the students in plaintiff's class, stating that plaintiff "ha[d] been asked to leave [LBY] unfortunately for a very serious reason," and that defendants "had asked the parents to impress upon her that she be discreet so as to protect her reputation." *See* Email, Pl.'s Opp'n Ex. A, Dkt. #66-1 at 90; Deutsch Dep., Pl.'s Opp'n Ex. B, Dkt. #66-2 at 358:23–360:6.

Plaintiff brought this action in May 2015. Compl., Dkt. #1. Plaintiff alleges that defendants' conduct surrounding plaintiff's expulsion, including their failure to investigate the anonymous phone call and their subsequent email to plaintiff's classmates' parents, constituted negligence, defamation, intentional infliction of emotional distress, prima facie tort, and breach of contract. *See* Am. Compl. ¶¶ 35–58, Dkt. #33. Plaintiff also contends that, in expelling her, defendants failed to accommodate her educational disability in violation of the Rehabilitation Act. *See id.* ¶¶ 69–74. Plaintiff states that she "suffers from learning disabilities and associated issues of behavior, self-esteem, and self-confidence." *Id.* ¶ 69. According to plaintiff, "the behaviors that the defendants cite as reasons for expelling [plaintiff] . . . are just manifestations of her learning disability and associated emotional issues." *Id.* ¶ 70. Plaintiff asserts that, "[a]lthough at first the defendant Congregation Lev Bais Yaakov made efforts to accommodate the plaintiff, ultimately they expelled her from the school and have asserted that the reasons they expelled her[] were reasons that relate to or flow from her educational disability." *Id.* ¶ 73.

After the parties conducted discovery, the court held a pre-motion conference regarding defendants' proposed motion for summary judgment. *See* Minute Entry (July 19, 2016), Dkt. #62. The court then issued an order directing defendants to move for summary judgment only as to plaintiff's Rehabilitation Act claim, on which the court's supplemental jurisdiction over

4

plaintiff's remaining state law claims depends.[3] *See* Order (July 19, 2016), Dkt. #61.

Defendants' motion is now before the court. *See* Defs.' Mot., Dkt. #64.

## STANDARD OF REVIEW

The court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Where, as here, the party opposing summary judgment bears the burden of proof at trial, summary judgment should be granted if the moving party can 'point to an absence of evidence to support an essential element of the nonmoving party's claim.'" *Gemmink v. Jay Peak Inc.*, 807 F.3d 46, 48 (2d Cir. 2015) (quoting *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995)). In deciding a summary judgment motion, "the court must resolve all ambiguities and draw all justifiable factual inferences in favor of the party against whom

---

[3] The court's subject matter jurisdiction must be based on a federal question because plaintiff has failed to meet her burden of showing that the court has diversity jurisdiction over this matter. *See Lamont v. City of New York*, No. 12-cv-2478, 2014 WL 4829328, at *9 (E.D.N.Y. Sept. 29, 2014) ("It is well established that the party seeking to invoke jurisdiction under 28 U.S.C. § 1332 bears the burden of demonstrating that the grounds for diversity exist and that diversity is complete." (alterations omitted) (quoting *Herrick Co. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322–23 (2d Cir. 2001))). Plaintiff has not attempted to show that the requirements for diversity jurisdiction have been satisfied. *See generally* Pl.'s Opp'n, Dkt. #66.

Defendants are residents and citizens of New York. *See* Am. Compl. ¶¶ 9–12, 14, Dkt. #33; Answer to Am. Compl. ¶¶ 9–12, 14, Dkt. #41. Plaintiff also appears to be a citizen of New York. Though plaintiff temporarily resided in Virginia at the beginning of this litigation while she attended school there, *see* Am. Compl. ¶ 7, this is insufficient to show that Virginia—and not New York, where her parents lived—was her domicile for purposes of the court's subject matter jurisdiction. *See, e.g., Glasford v. Schreier*, No. 03 Civ. 9494, 2004 WL 1469469, at *2 (S.D.N.Y. June 30, 2004) ("Generally, a college student retains the domicile of his parents while he attends college. . . . The determinative factor in cases dealing with students attending school out-of-state is whether the parents continue in their parental roles in supporting the minor child." (citation omitted)). Because plaintiff has not even attempted to provide the court with facts showing that she did not retain her parents' domicile when she attended school in Virginia, the court's jurisdiction must be based on a question of federal law.

5

summary judgment is sought." *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

## DISCUSSION

As a preliminary matter, plaintiff purports to bring her Rehabilitation Act claim against all three defendants—LBY, Oratz, and Deutsch. However, claims under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Section 504 claims"), cannot be brought against individuals. *See, e.g.*, *MB v. Islip Sch. Dist.*, No. 14-CV-4670, 2015 WL 3756875, at *9 (E.D.N.Y. June 16, 2015). Thus, Oratz and Deutsch are entitled to summary judgment as to plaintiff's Section 504 claim. *See id.* The remainder of this section discusses the viability of plaintiff's federal claim against LBY.

In her brief, plaintiff details multiple ways in which LBY allegedly failed to accommodate her learning disability, in violation of Section 504, over the course of her three semesters at the school.[4] *See* Pl.'s Opp'n at 22–26, Dkt. #66 at 27–31. Plaintiff further alleges that LBY expelled her for behaviors that "are just manifestations of her learning disability and associated emotional issues," also in violation of Section 504. *See* Am. Compl. ¶ 70. As explained below, both formulations of plaintiff's Section 504 claim fail as a matter of law.

Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, provides as follows: "No otherwise qualified individual with a disability . . . shall, solely by reason of her . . . disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination

---

[4] Defendants argue that plaintiff cannot bring a claim based on LBY's allegedly inadequate attempts to accommodate plaintiff's learning disability before her expulsion because plaintiff did not explicitly plead the underlying facts in her complaint. *See* Defs.' Reply in Supp. of Mot. for Summ. J., Dkt. #67 at 2. Even at this stage, however, it would be within the court's discretion to grant plaintiff leave to amend her complaint if justice so required. *See Bryant v. Steele*, 64 F. Supp. 3d 441, 445–46 (E.D.N.Y. 2014) ("[E]ven in circumstances where there was significant delay and discovery had been completed, the Second Circuit has granted leave to amend . . . ."). Thus, the court will evaluate the merits of this potential claim before granting summary judgment to defendants.

6

under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). "Claims alleging disability discrimination in violation of . . . the Rehabilitation Act are subject to the burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). . . . Under this standard, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination." *Manns v. United Airlines*, No. 13-CV-3668, 2016 WL 6826761, at *7 (E.D.N.Y. Nov. 17, 2016) (citations omitted). "A prima facie violation of Section 504 requires proof from the plaintiff that '(1) [s]he is a "disabled person" under the Rehabilitation Act; (2) [s]he is "otherwise qualified" for the program; (3) [s]he is excluded from benefits solely because of [her] disability; and (4) the program or special service receives federal funding.'" *C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 840–41 (2d Cir. 2014) (alterations omitted) (quoting *Mrs. C. v. Wheaton*, 916 F.2d 69, 74 (2d Cir. 1990)).

Discrimination claims under Section 504 can be brought under three theories: disparate treatment (or intentional discrimination), disparate impact, and failure to accommodate. *B.C. v. Mount Vernon Sch. Dist.*, 837 F.3d 152, 158 (2d Cir. 2016). As stated above, plaintiff argues both that LBY failed to make reasonable accommodations for her while she was a student, and that LBY intentionally discriminated against her by expelling her. I analyze plaintiff's claims under both theories below. Regardless of which theoretical framework is applied to plaintiff's claims, summary judgment for LBY as to plaintiff's Section 504 claim is warranted.

### A. Failure to Accommodate

#### 1. Legal Framework

Plaintiff spends much of her brief detailing her struggles at LBY, arguing that the school failed to provide reasonable accommodations for her while she was a student. *See* Pl.'s Opp'n at 4–11, 22–27, Dkt. #66 at 9–16, 27–32. To comply with Section 504's prohibition against

7

excluding disabled people from benefits solely because of their disabilities, public schools must "make 'reasonable accommodations' to enable 'meaningful access' to services, programs, and activities." *Ross v. City Univ. of N.Y.*, --- F. Supp. 3d ---, No. 15-cv-4252, 2016 WL 5678560, at *5 (E.D.N.Y. Sept. 29, 2016) (quoting *Bernstein v. City of New York*, 621 F. App'x 56, 59–60 (2d Cir. 2015)). In the education context, "[a] plaintiff alleging that he was denied a reasonable accommodation bears the burdens of both production and persuasion as to the existence of some accommodation that would allow him to meet the essential eligibility requirements of the service, program, or activity at issue." *McElwee v. Cty. of Orange*, 700 F.3d 635, 642 (2d Cir. 2012). "Once the plaintiff has demonstrated that there is a 'plausible accommodation, the costs of which, facially, do not clearly exceed its benefits,' the defendant bears the burden of proving that the requested accommodation is unreasonable." *Id.* (quoting *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995)).

Both plaintiff and defendants fail to mention that the "reasonable accommodations" standard does not apply to private schools. Rather, the relevant regulations articulate a different standard: "A recipient that provides private elementary or secondary education may not, on the basis of handicap, exclude a qualified handicapped person if the person can, *with minor adjustments*, be provided an appropriate education, as defined in § 104.33(b)(1), within that recipient's program or activity." 34 C.F.R. § 104.39 (emphasis added). Section 104.33(b)(1), in turn, provides as follows: "[T]he provision of an appropriate education is the provision of regular or special education and related aids and services that (i) are designed to meet individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons are met and (ii) are based upon adherence to procedures that satisfy the requirements of

8

§§ 104.34, 104.35, and 104.36."[5] 34 C.F.R. § 104.33(b)(1). There is very little case law elucidating the "minor adjustments" standard that applies in private schools. From the text of the regulation, I can infer that a "minor adjustment" must be something lesser than a "reasonable accommodation." *See Hunt v. St. Peter Sch.*, 963 F. Supp. 843, 852 (W.D. Mo. 1997) ("[I]t is clear that minor adjustment is less than a reasonable accommodation. Minor indicates a minimal burden and adjustment implies a small correction.").

2. *Analysis*

Plaintiff has not raised a triable issue of fact as to whether LBY failed to accommodate her because she has not met her burden of identifying any "minor adjustments" that would have allowed her to succeed at LBY. Plaintiff states in her brief that LBY failed to consult the IEP that she obtained prior to attending LBY and that LBY refused to place plaintiff in a remedial biology class free of charge. Both arguments fail.

First, plaintiff relies heavily on the fact that she had an IEP, obtained prior to her enrollment in LBY, which LBY did not implement and may not even have possessed. *See* Pl.'s Opp'n at 5, 22–23, Dkt. #66 at 10, 27–28. However, IEPs are required for public school districts, not private schools. *See St. Johnsburg Academy v. D.H.*, 240 F.3d 163, 171 (2d Cir. 2001) ("IDEA's implementing rules reinforce the principle that IDEA applies only to the State and other public agencies, *not* to private schools in which public agencies may place children. . . . [I]t is the *'public agency'* that must *'[e]nsure* that an IEP is . . . implemented for

---

[5] Plaintiff argues that defendants failed to comply with 34 C.F.R. §§ 104.35 and 104.36 by failing to conduct evaluations of plaintiff and to meet with her parents to discuss her academic performance. Pl.'s Opp'n at 25, Dkt. #66 at 30. These regulations do not apply to private schools that do not purport to provide special education. *See* 34 C.F.R. § 104.35 ("A recipient that operates a public elementary or secondary education program or activity shall conduct an evaluation . . . ."); *id.* § 104.36 ("A recipient that operates a public elementary or secondary education program or activity shall establish and implement . . . a system of procedural safeguards . . . .").

each eligible child placed in or referred to a private school or facility by the public agency.'" (quoting 34 C.F.R. § 300.341)). Moreover, Oratz testified that plaintiff's parents did not disclose the fact that plaintiff had an IEP in plaintiff's application to LBY. Oratz Dep., Pl.'s Opp'n Ex. C, Dkt. #66-3 at 87:14–88:1. When plaintiff's father was asked during his deposition whether he and his wife had any meetings with LBY regarding plaintiff's IEP, he said they did not, and that he did not know what an IEP was. Dep. of Pl.'s Father, Pl.'s Opp'n Ex. F, Dkt. #66-6 at 26:17–27:6. For these reasons, plaintiff cannot now, in retrospect, claim that LBY should have implemented the provisions in the IEP.

Plaintiff also notes that her parents asked that she be placed in a remedial biology class free of charge, and that Deutsch denied the request. Pl.'s Opp'n at 6, 23, Dkt. #66 at 11, 28. But plaintiff has not met her "burden of producing evidence as to the facial reasonableness of the accommodation." *See Dean v. Univ. at Buffalo Sch. of Med. & Biomed. Scis.*, 804 F.3d 178, 190 (2d Cir. 2015). The record shows that Oratz and Mrs. Weissman, LBY's general studies coordinator, sent a letter to plaintiff's parents dated October 17, 2012, stating that LBY recommended that plaintiff take an additional weekly biology class with a teacher named Mrs. Paskesz, at a cost of $17.50 per week, in order to help plaintiff succeed on the "biology regent exam" the following summer. Letter, Pl.'s Opp'n Ex. A, Dkt. #66-1 at 25. The letter further stated that "the biology regent exam is unequivocally a critical component in the acquisition of a high school regents diploma." *Id.* According to plaintiff, 34 C.F.R. § 104.39, a regulation concerning private education, permits LBY to pass on to students only its actual expenses, and LBY "has made no showing that the assessed fee represents its actual expenses in operating the class and therefore has not demonstrated entitlement to insist on reimbursement as a condition on permitting the plaintiff to participate in the remedial biology program." Pl.'s Opp'n at 23, Dkt.

10

#66 at 28.

The relevant regulation states that "[a] recipient to which this section applies may not charge more for the provision of an appropriate education to handicapped persons than to nonhandicapped persons *except to the extent that any additional charge is justified by a substantial increase in cost to the recipient.*" 34 C.F.R. § 104.39(b) (emphasis added). This regulation states that private schools may pass on "substantial" costs to the families of disabled students. It is unclear why the plaintiff thinks that defendants bear the burden of showing that the cost of their remedial biology program is justified. It is *plaintiff's* burden to show that LBY made a discriminatory decision in the way it operated its curriculum. Plaintiff cannot shift the burden of proof to LBY simply by pointing out the existence of a biology class at LBY that charges a fee.

Nor has plaintiff identified any other accommodations that were requested by her parents and denied by LBY. "[A] defendant is not liable for failure to provide a reasonable accommodation under the ADA[6] if the plaintiff does not ask for an accommodation, or fails to provide information necessary to assess the request for an accommodation." *Grabin v. Marymount Manhattan Coll.*, No. 12 Civ. 3591, 2014 WL 2592416, at *14–15 (S.D.N.Y. June 10, 2014) (holding that defendant was not entitled to summary judgment where "a reasonable fact-finder could determine that [p]laintiff notified [defendant] repeatedly and clearly regarding her disability, and provided documentation regarding the same"). When plaintiff's father was questioned about the meetings he had with LBY teachers and administrators while plaintiff was a

---

[6] The antidiscrimination standards under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act "are generally the same," and, unless some "subtle distinction[] between the statutes [is] implicated in [a] case," courts "'treat claims under the two statutes identically.'" *Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016) (quoting *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003)).

11

student, he answered that plaintiff "was failing at some subjects and we tried to work out the stronger subjects that she was good with and tried to concentrate on those." Dep. of Pl.'s Father, Pl.'s Opp'n Ex. F, Dkt. #66-6 at 26:13–16. Notably, plaintiff's father did not say that he and his wife ever requested that LBY make any accommodations for plaintiff's disability.

Furthermore, the record demonstrates that LBY did take initiative in attempting to help plaintiff improve her academic performance. For example, Tova Bollag, LBY's social worker, met with plaintiff periodically "in relation to her academic struggle," and "met with the principals to discuss ways to support [plaintiff] within the context of the academic environment in the school." LBY Dep., Pl.'s Opp'n Ex. E, Dkt. #66-5 at 25:6–26:3. Plaintiff also acknowledges that Oratz reached out to plaintiff's mother in November 2012 "requesting that the plaintiff's religious studies tutor contact a school employee so that the school could better understand the plaintiff's limitations and to form more reasonable expectations." Pl.'s Opp'n at 6, Dkt. #66 at 11; Email, Pl.'s Opp'n Ex. A, Dkt. #66-1 at 29. Additionally, an email from February 2013 indicates that LBY's general studies coordinator was attempting to find a new math tutor for plaintiff. See Pl.'s Opp'n at 7, Dkt. #66 at 12; Email, Pl.'s Opp'n Ex. A, Dkt. #66-1 at 126. Finally, at Oratz's suggestion, defendants also met with plaintiff's parents a few days before she was expelled in order to discuss possible strategies to help plaintiff improve her academic performance.[7] See Pl.'s Opp'n at 9–11, Dkt. #66 at 14–16.

I cannot say based on this record that a reasonable jury could find that LBY discriminated

---

[7] Plaintiff asserts that an email from plaintiff's father to LBY, dated November 26, 2013, "indicates that he requested a meeting long before." Pl.'s Opp'n at 10, Dkt. #66 at 15. However, the email states only that plaintiff's parents were "eagerly awaiting" their appointment and did not "want the rest of the [school] year to continue this way." Email, Pl.'s Opp'n Ex. A, Dkt. #66-1 at 88. Sochaczewski responded that she had told plaintiff's mother at a PTA meeting "to contact the secretary to set up an appointment." Id. The email exchange in no way demonstrates that LBY had been ignoring plaintiff's parents' requests to meet.

against plaintiff by failing to make minor adjustments to provide her with an appropriate education. Thus, to the extent plaintiff bases her Section 504 claim on this theory, her claim fails as a matter of law.

### B. Disparate Treatment or Intentional Discrimination

Under the *McDonnell Douglas* framework, if a plaintiff succeeds in establishing a *prima facie* case of discrimination, "the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for" its action. *Manns*, 2016 WL 6826761, at *9. "If the defendant establishes a nondiscriminatory reason, the burden shifts back to the plaintiff to raise a triable issue of fact as to whether the legitimate, nondiscriminatory reason is merely pretextual." *Id.* Plaintiff's intentional discrimination claim based on her expulsion fails as a matter of law because LBY has articulated a valid nondiscriminatory reason for expelling plaintiff, and plaintiff has failed to present evidence allowing a reasonable jury to find that the nondiscriminatory reason is pretextual. *See Manns*, 2016 WL 6826761, at *11.

Plaintiff argues that LBY expelled her because of its "frustration and incompetence in not knowing how to educate" her. Pl.'s Opp'n at 29, Dkt. #66 at 34. According to plaintiff, the anonymous phone call is defendants' "pretext by which they seek to justify their wrongful acts." *Id.* at 1, Dkt. #66 at 6. Defendants counter that "plaintiff's expulsion was a direct result of her violation of the behavioral rules and regulations of the school." Defs.' Mot for Summ. J. at 4, Dkt. #64. Specifically, defendants assert that, after the anonymous phone call, "Rabbi Deutsch made the decision to expel the plaintiff because he felt he had an obligation to the rest of the students to protect them from being affected by her behavior." *Id.* at 2. Plaintiff's claim fails because she has not presented the court with evidence corroborating her theory.

In his deposition, Deutsch testified that he thought the plaintiff's alleged transmittal of

13

the nude photograph, which precipitated her expulsion, had the potential to affect the well-being of the other girls at LBY. Deutsch Dep., Pl.'s Opp'n Ex. B, Dkt. #66-2 at 273:15–275:5. Thus, the evidence in the record shows that plaintiff was expelled not because of any disability, but because of a report of inappropriate behavior the administrators believed could affect students.

Plaintiff argues that the report of the nude photo was simply "the perfect excuse" for expelling plaintiff and asserts that this is why Deutsch did not conduct his own investigation into the veracity of the phone call. Pl.'s Opp'n at 28, Dkt. #66 at 33. But plaintiff points to no evidence linking her expulsion to any discriminatory motive. *See Manns*, 2016 WL 6826761, at *11 ("Although [plaintiff] argues that [defendant's] nondiscriminatory justification is pretextual and that they fired him because they were 'tired of his protests' and wanted to 'get an irritant out of their midst,' these conclusory claims are not sufficient to show either that [defendant] was motivated by discrimination or that [defendant's] nondiscriminatory reason is not credible. The evidence [plaintiff] presents . . . provides no indication that he was fired because of his disability."). Indeed, plaintiff admits that, just days before she was expelled, defendants met with plaintiff's parents to discuss how to improve plaintiff's academic performance. *See* Pl.'s Opp'n at 26–27, Dkt. #66 at 31–32. Further, Deutsch testified that he "believe[d] the principals took [the anonymous] phone call very seriously, and that they believed the call was genuine, . . . and based on those facts . . . [he] made [his] decision."[8] Deutsch Dep., Pl.'s Opp'n Ex. B, Dkt.

---

[8] In her complaint, plaintiff alternatively asserts that, even if LBY did expel her on the basis of the information conveyed in the phone call, LBY was not permitted to do so because any such behavior on plaintiff's part was a "manifestation[] of her learning disability and associated emotional issues." Am. Compl. ¶ 70. Even assuming this is true, defendants' asserted reason for expelling plaintiff does not run afoul of the Rehabilitation Act. *See Tylicki v. St. Onge*, 297 F. App'x 65, 67 (2d Cir. 2008) ("[T]he ADA and the Rehabilitation Act permit [a school] to discipline a student even if the student's misconduct is the result of disability."); *Raytheon Co. v. Hernandez*, 540 U.S. 44, 54 n.6 (2003) ("To the extent that the court suggested that, because respondent's workplace misconduct is related to his disability, petitioner's refusal to rehire respondent on account of that workplace misconduct violated the ADA, we point out that we have rejected a similar argument in the context of the Age Discrimination in Employment Act.")

#66-2 at 245:5–10. Plaintiff has failed to present the court with evidence creating a triable issue of fact as to whether LBY's asserted reason for expelling plaintiff was pretextual, and her intentional discrimination claim must thus fail.[9]

### C. The Court Declines to Exercise Supplemental Jurisdiction over Plaintiff's State Law Claims

Plaintiff first argues that, even if her federal claim is dismissed at this stage, the court must retain jurisdiction over the rest of the action, which comprises state law claims only.[10] Pl.'s Opp'n at 30, Dkt. #66 at 35. According to plaintiff, her Section 504 claim was well-pleaded and not trivial when she filed her complaint, so her action arose under federal law, and the court does not lose jurisdiction "retroactively" if the federal claim is dismissed on summary judgment. *See id.* at 30–32, Dkt. #66 at 35–37.

This argument seems to assume that a court evaluates its subject matter jurisdiction at the start of a suit and does not revisit it as the litigation progresses. This is incorrect. Though plaintiff's complaint does include a federal claim, over which the court has original federal

---

(citing *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993)).

[9] Defendants also argue that plaintiff's Section 504 claim should be dismissed because LBY was not receiving federal funds at the time of the alleged discrimination. *See* Defs.' Mot. at 2–3, Dkt. #64. It is true as a general matter that "the program accused of discrimination must be a recipient of federal financial assistance at the time of the alleged discrimination." *Stephanidis v. Yale Univ.*, 652 F. Supp. 110, 113 (D. Conn. 1986), *aff'd*, 814 F.2d 654 (2d Cir. 1987). Defendants admit, however, that LBY received federal funds as late as September 2013—three months before, and in the same semester and calendar year as, the alleged discriminatory expulsion. *See* Defs.' Mot. at 1, Dkt. #64. It is not clear from the case law whether this funding should be considered to have been received at the time of the alleged discrimination. *Cf. Stephanidis*, 652 F. Supp. at 113 (concluding that Rehabilitation Act did not apply where "none of the federal grants . . . were in effect in 1981, the year in which plaintiff alleged that he was discriminated against"); *Nolley v. Cty. of Erie*, 776 F. Supp. 715, 743 (W.D.N.Y. 1991) (concluding that Rehabilitation Act did not apply where defendant did not receive federal funds "during the years plaintiff" alleged he was discriminated against). In any event, I need not address this argument because summary judgment for LBY is warranted on other grounds.

[10] As stated above, plaintiff's state law claims are (1) negligence, (2) defamation, (3) intentional infliction of emotional distress, (4) prima facie tort, and (5) breach of contract. Am. Compl. ¶¶ 35–67.

question jurisdiction, the court's jurisdiction over the state law claims is separately governed by the doctrine of supplemental jurisdiction. *See Oneida Indian Nation of N.Y. v. Madison Cty.*, 665 F.3d 408, 436 (2d Cir. 2011). "The issue whether supplemental jurisdiction has been properly assumed is one which remains open throughout the litigation." *Id.* at 437 (alterations omitted) (quoting *Rounseville v. Zahl*, 13 F.3d 625, 631 (2d Cir. 1994)); *see also Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 445 (2d Cir. 1998) (stating that federal courts must consider whether to exercise supplemental jurisdiction "at every stage of the litigation" (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988))). Thus, regardless of whether the court had jurisdiction over this matter at its inception, the court is tasked with re-evaluating that jurisdiction now.

Plaintiff purports to argue in the alternative that the court should exercise supplemental jurisdiction over her state law claims if her federal claim is dismissed. Pls.' Opp'n at 32, Dkt. #66 at 37. The supplemental jurisdiction statute, 28 U.S.C. § 1367, states that, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). The statute further provides that a "district court[] may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3). When deciding whether to decline to exercise jurisdiction, the court should "consider[] several related factors—judicial economy, convenience, fairness, and comity." *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 56 (2d Cir. 2004). "Applying these factors, [the Second Circuit] has held, as a general proposition, that 'if [all] federal claims are dismissed *before trial* . . . , the state claims should be dismissed as

16

well.'" *See id.* (quoting *Castellano v. Bd. of Trustees*, 937 F.2d 752, 758 (2d Cir. 1991)). However, where "the dismissal of the federal claim occurs 'late in the action, after there has been substantial expenditure in time, effort, and money in preparing the dependent claims, knocking them down with a belated rejection of supplemental jurisdiction may not be fair.'" *Id.* (quoting *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir. 1994)).

The court concludes that, at this relatively early stage in the proceedings, the interests of judicial economy, convenience, fairness, and comity will be best served by declining to exercise supplemental jurisdiction over plaintiff's state law claims. No trial has been held in this case, so the default rule is that the court should dismiss plaintiff's state law claims. *See id.* The court sees no reason to depart from the default rule in this case. Prior to the briefing of the instant motion, the court informed the parties that it "would not exercise jurisdiction to consider plaintiff's state law claims if defendants [were] entitled to summary judgment . . . on plaintiff's Rehabilitation Act claim." Order at 2 (July 19, 2016), Dkt. #61. To conserve judicial resources and act in fairness to the parties, the court asked defendants to move for summary judgment as to plaintiff's federal claim only. *Id.* This is because the court did not wish to "unnecessarily prolong[] [this litigation] by the briefing of summary judgment motions on numerous state law claims that the court would not consider." *Id.* Accordingly, the parties have not expended resources arguing the merits of their state law claims, and the court has not expended resources adjudicating them.

Moreover, "although [p]laintiff's state . . . law claims arise generally from the same set of facts as her federal claims, the legal frameworks under which [the] court must evaluate the state . . . laws at issue diverge, often substantially, from those governing [Rehabilitation Act] claims." *Hernandez v. City of New York*, No. 11. Civ. 6644, 2015 WL 321830, at *25 (S.D.N.Y.

17

Jan. 23, 2015). Where, as here, plaintiff's state law claims—which are state common law tort and contract claims—"require separate analyses from her federal claims, the [c]ourt's retention of jurisdiction would not significantly conserve judicial resources." *Id.* at *26. Additionally, because "divergent legal frameworks" apply to plaintiff's federal and state law claims, "principles of comity weigh heavily against retaining jurisdiction." *Id.* Thus, "[g]iven that plaintiff's remaining claims are squarely rooted in state common law, and [her] federal claim [is] dismissed prior to trial and not late in this action, this [c]ourt declines to exercise supplemental jurisdiction over plaintiff's state law claims." *Johnson v. Cty. of Nassau*, No. 07-CV-79, 2009 WL 1117395, at *1 (E.D.N.Y. Apr. 24, 2009).

## CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment as to plaintiff's Rehabilitation Act claim is granted. The court declines to exercise supplemental jurisdiction over plaintiff's remaining state law claims. Accordingly, plaintiff's complaint is dismissed in its entirety. Plaintiff's Rehabilitation Act claim is dismissed with prejudice, and plaintiff's state law claims are dismissed without prejudice to plaintiff's pursuing them in state court. The Clerk of Court is respectfully directed to enter judgment in favor of defendants and close the case.

SO ORDERED.

/s/(ARR)

Allyne R. Ross
United States District Judge

Dated: February 2, 2017
Brooklyn, New York